RENDERED: JANUARY 8, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1710-ME

ERIC JASON WILSON                                        APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 18-CI-500350

KATHRYN WILSON                                        APPELLEE

AND        NO. 2019-CA-1829-ME

ERIC JASON WILSON                                        APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 18-CI-500350

KATHRYN WILSON                                        APPELLEE

\*\* \*\* \*\* \*\* \*\*

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE:  Eric Jason Wilson ("Jason") appeals from the Jefferson Circuit Court's order modifying a parental timesharing arrangement between Jason and Kathryn Wilson ("Kathryn") and recalculating the amount of child support owed by Jason to Kathryn.  Jason also appeals the Jefferson Circuit Court's order denying his motion to compel Kathryn to submit to a hair follicle drug screen.  Finding no error as to either of the circuit court's orders, we affirm.

## BACKGROUND

Jason and Kathryn are the parents and joint custodians of two children:  E.W., who was born in 2010 ("Older Child"), and A.W., who was born in 2016 ("Younger Child").  Jason and Kathryn were married in 2008, and Jason filed for a legal separation in February of 2018.  The court granted a decree of legal separation on June 26, 2018 (the "Separation Decree").  As part of the Separation Decree, the court ordered that the parties would have joint custody of the two children.

In terms of parental timesharing, the Separation Decree stated that, per agreement of the parties, Older Child would reside with Jason at his military assignment in South Korea while Younger Child would reside with Kathryn in

Kentucky.  Further, the Separation Decree ordered Jason to pay $1,000.00 per month to Kathryn in child support.  The Separation Decree stated that both the "[r]esidential custody" and the amount of child support would be reviewed – and possibly modified – by the court in June of 2019, at which time Jason expected to return to the United States from South Korea upon his retirement from the military.

Thereafter, on July 31, 2018, Jason made a motion to compel Kathryn to take a hair follicle drug test.  In his motion, Jason stated that he believed Kathryn's drug use to be "apparent through his contact with her and in observing her."  Jason further alleged that Kathryn had a history of drug use and indicated in his motion his belief that a drug screening was necessary to determine if Kathryn was endangering Younger Child through her alleged use of illicit drugs.

The court ordered Kathryn to submit to a urine drug test, and she ultimately provided the negative results of such a test on August 8, 2018.  Thereafter, the court entered an order on August 22, 2018, denying Jason's motion for a hair follicle test and finding insufficient probable cause for such a seizure as required under the Fourth Amendment to the United States Constitution.

On February 5, 2019, Jason filed a renewed motion to compel Kathryn to submit to a hair follicle drug test, alleging that since the date of his first motion to compel Kathryn to submit to a hair follicle drug screen, Kathryn had admitted in a text message to him that she had used drugs.  Specifically, Jason

submitted a text message exchange with his motion in which Kathryn stated: "I mean I could lose my other daughters and my job over marijuana I smoked 3 months ago. Seriously." On February 11, 2019, the court entered another order denying Jason's motion to compel Kathryn to submit to a hair follicle drug test, again finding no good cause to justify such a test.

On March 22, 2019, Kathryn filed a "Motion to Enter Agreement of Parties as an Order of the Court." The motion contained two handwritten statements – one purporting to be signed by Jason and the other by Kathryn – and both dated June of 2018. The purported agreements stated that Kathryn was allowing Older Child to stay with Jason for one calendar year, beginning on June 16, 2018. On April 2, 2019, the court entered an order denying Kathryn's motion, noting that the handwritten agreements pre-dated the Separation Decree and that portions of such agreements had already been incorporated into the final Separation Decree.

On May 16, 2019, Kathryn filed a motion to compel Jason to return Older Child from South Korea. In such motion, she again relied on the written agreements from June of 2018 to argue that the parties had only agreed to have Older Child live with Jason in South Korea for one calendar year.

Thereafter, Jason filed a motion on June 28, 2019, to convert the Separation Decree to a decree of dissolution. The court did so, converting the

Separation Decree into a decree of dissolution on July 8, 2019 (the "Dissolution Decree"). The court specifically ordered in the Dissolution Decree that all provisions of the Separation Decree were incorporated by reference and were binding on the parties unless modified by further order of the court.

After the court entered the Dissolution Decree, Jason filed a motion to modify child support on July 9, 2019, stating that Kathryn was voluntarily underemployed. Jason argued that, because the court should impute a full-time wage to Kathryn and account for the fact that Older Child was primarily residing with Jason full-time, Jason should only be paying $539.00 per month in child support payments to Kathryn under the Kentucky Child Support Guidelines.

Additionally, on August 14, 2019, Jason filed a motion to modify parenting time pursuant to Kentucky Revised Statutes (KRS) 403.270, asking that both children live with him in South Korea during the school year and with Kathryn during the summer. Jason again voiced concerns over Kathryn's alleged drug use, as well as his concerns that Kathryn had violated the court's orders not to speak about the litigation with the children or to disparage Jason to the children. Jason further alleged that Kathryn was cohabitating with a drug addict, that her older children were negative influences, and that Older Child's academics had flourished during her time in South Korea with Jason.

After a hearing on September 6, 2019, the court entered an order on September 25, 2019, finding that the parties had agreed that parenting time would be subject to modification as of June of 2019 and that modification of the parental timesharing arrangement was necessary to ensure that the children had liberal access to both parents. The court began its analysis by noting that equal parenting time was not feasible so long as Jason remained in South Korea, that both parents provided stable and appropriate homes for the children, and that the court had no concerns with the children's safety or wellbeing in either parent's home. The court found Jason's accusations that Kathryn drank excessively and allegations regarding Kathryn's drug use to be unsupported, particularly based on the fact that Jason was proposing that the children live with Kathryn during the summer. The court further found that the only evidence of Kathryn's drug use was the message to Jason in which she stated that she could lose her children and her job "over marijuana I smoked 3 months ago."

The court ultimately concluded that it would be in both children's best interest to live primarily with Kathryn, finding that Kathryn had been the children's main caregiver, and the children had lived in Kentucky for most of their lives. The court found that the children had extended family, friends, schools, and healthcare providers in Kentucky, and that it could be traumatizing to Younger

-6-

Child to place her with Jason for months at a time without in-person contact with Kathryn, as she had not had sufficient time to build a relationship with Jason.

Therefore, the court ordered Older Child to be returned to Kentucky within thirty days of entry of its order. The court further ordered that Jason would have parenting time with both children for a 10-day period over Older Child's winter break and for a nine-day period over Older Child's spring break. Further, the court ordered that both children would reside with Jason during the summer beginning in June of 2020. The court noted it anticipated that, upon Jason's retirement from the military and return to the United States, the parties would transition to a more equal parenting schedule.

Additionally, the court increased Jason's child support obligation. Particularly, the court found that the Kentucky Child Support Guidelines set forth in KRS 403.312 required that Jason pay child support of $1,367.00 per month, which was a 15% increase in his current obligation. The court found that it could not impute income to Kathryn under the statute, as she was caring for a child of the parties under the age of four. After Younger Child's fourth birthday, however, the court ordered that Jason's child support obligation would be reduced to $1,275.00 per month.

On October 7, 2019, Jason filed a motion for additional findings of fact, to alter, amend, or vacate the court's order or, in the alternative, for a new

trial.  The court denied Jason's motion in an order dated November 6, 2019.  Jason filed a timely appeal of those orders to this Court on November 12, 2019.

Additionally, on November 25, 2019, Jason filed a third motion to compel Kathryn to take a hair follicle drug test based on the court's finding in its September 25, 2019 order that Kathryn had stated in a message to Jason that she could lose her children and job over marijuana she had smoked three months prior. Jason argued that, because Kathryn had not taken a subsequent drug screen since the court's finding of drug use, such finding constituted probable cause for the court to compel Kathryn to take a hair follicle test.

In an order dated December 3, 2019, the court denied Jason's motion to compel the hair follicle drug screen, and Jason filed an appeal on December 9, 2019.  Upon Jason's motion, this Court consolidated the two appeals via an order entered on March 13, 2020.

Additional facts will be discussed as they become relevant.

## ANALYSIS

### 1.  Modification of Parental Timesharing

Jason first argues that the court did not address the "mandatory requirement to consider all factors under KRS 403.270."  We note that KRS 403.270 deals with an initial custody determination, which is "a separate stage of a custody dispute" from a modification of visitation or timesharing.  *Layman v.*

*Bohanon*, 599 S.W.3d 423, 430 (Ky. 2020). As stated by a panel of this Court, "[a] modification of [parental] timesharing maintains the basic custodial framework agreed upon by the parties but changes the amount of time that each parent spends with the child within that framework." *Humphrey v. Humphrey*, 326 S.W.3d 460, 464 (Ky. App. 2010). As a result, "motions to modify visitation/timesharing are brought under KRS 403.320(3), which permits modification when it 'would serve the best interests of the child.'" *Id.* (citing *Pennington v. Marcum*, 266 S.W.3d 759, 769 (Ky. 2008)).

In the present case, the parties sought - and the family court ordered - a modification of timesharing and not a modification of the parties' custody arrangement. As a result, the court correctly applied KRS 403.320(3) and thus could modify the timesharing arrangement if it found that the modification was in the best interests of the children. *See Layman*, 599 S.W.3d at 431.

Having clarified the correct application of KRS 403.320(3), as opposed to KRS 403.270(2), to the case *sub judice*, we next note that the circuit court has broad discretion in modifying parental timesharing. *Pennington*, 266 S.W.3d at 769. Accordingly, we "will only reverse a trial court's determinations as to visitation if they constitute a manifest abuse of discretion, or were clearly erroneous in light of the facts and circumstances of the case." *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000) (citation omitted). Furthermore, "[d]ue regard

shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Humphrey*, 326 S.W.3d at 463 (citation omitted).

In this case, as discussed above, the modification of the timesharing schedule was governed by KRS 403.320(3) and the best interest standard. On this point, Jason argues that the circuit court failed to consider certain facts related to Kathryn's motivations in participating in the custody proceeding, Older Child's adjustment to and accomplishments she had obtained in South Korea, Older Child's relationship with her parents, and how Older Child would adjust to returning to Kentucky after her time in South Korea.

We find, however, that the court discussed relevant facts that supported the modification and that were both supported by substantial evidence and sufficient to satisfy the best interests of the children standard. For example, the court explained that Kathryn had been the children's primary caregiver for the majority of their lives, that the children's extended family and friends were in Kentucky, and that it could be traumatizing for Younger Child to be with Jason for long periods of time without contact with Kathryn.

The bulk of Jason's arguments regarding the best interests of the children involve disagreements with the court's findings of fact, those facts which the court determined were important in the case, and the insertion of Jason's own opinions concerning the relevance of particular facts. However, as previously

discussed, we review the court's findings under the "clearly erroneous" standard, whereby "[r]egardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding . . . appellate courts should not disturb trial court findings that are supported by substantial evidence." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citations and footnotes omitted). Here, the court's findings concerning the modification of parental timesharing were supported by substantial evidence, and we therefore affirm the circuit court on this issue.

## 2. Modification of Child Support

Jason next argues that the court erred when it increased the amount of child support payments owed by Jason to Kathryn. However, his primary argument is that the court erred in increasing Jason's child support obligation because the only motion to modify child support was filed by Jason and not Kathryn. As noted by Kathryn, however, the issue of child support "is subject to reconsideration by the trial court whenever this subject is properly presented." *Farmer v. Farmer*, 506 S.W.2d 109, 111 (Ky. 1974) (citations omitted).

Particularly, KRS 403.213(1) defines when and upon what circumstances a child support order may be modified. The statute specifically states that "[t]he provisions of any decree respecting child support may be modified . . . only upon a showing of a material change in circumstances that is

substantial and continuing." Therefore, while the statute mandates that child support orders may only be modified after a motion for modification, the statute does not require that the motion be filed by a specific party.

Here, per KRS 403.213(1), Jason filed a motion alleging a substantial and continuing material change in circumstances that created a presumption for a modification in child support. While Jason's wish may have been that such modification was a decrease in the amount of support he owed rather than an increase, the issue of child support modification was properly before the court and we therefore affirm the circuit court as to this issue.

### 3. Hair Follicle Drug Screen

Lastly, Jason argues that the circuit court erred in denying his motion to compel Kathryn to submit to a hair follicle drug test. While we agree that governmentally-compelled drug testing implicates the right to be free of unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, we do not believe the situation in this case to require a full analysis of constitutional law. Here, because the circuit court *denied* Jason's motion to compel such a search and seizure, our standard of review is akin to the standard we would use to review a court's denial of what was - essentially - a motion to compel discovery. An appellate court reviews a circuit court's rulings on both evidentiary issues and discovery disputes for an abuse of discretion.

*Manus, Inc. v. Terry Maxedon Hauling, Inc.*, 191 S.W.3d 4, 8 (Ky. App. 2006) (footnote and citation omitted).

In the present case, we see no abuse of the court's discretion in its decision to deny Jason's motion to compel Kathryn to submit to the hair follicle drug screen. Such motion was based in large part upon Kathryn's history prior to the parties' marriage and children, pictures of Kathryn, the drug history of Kathryn's previous boyfriend, and the drug usage of Kathryn's friend. Moreover, the one drug test that Kathryn performed was negative for any substances. We see no abuse of the court's discretion in this situation.

## CONCLUSION

For the foregoing reasons, the orders of the Jefferson Circuit Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Allen McKee Dodd
Louisville, Kentucky

BRIEF FOR APPELLEE:

J. Clark Baird
Louisville, Kentucky